**Julie Christine RHODES, Personal Representative of the Estate of Cheri Ann Pederson, Deceased Appellant,**

v.

**Wayne G. PEDERSON, Appellee.**

No. 2006–CA–000909–MR.

Court of Appeals of Kentucky.

July 6, 2007.

Matthew J. Madsen, St. Louis, MO, Richard C. Roberts, Paducah, KY, for Appellant.

William G. Deatherage, Jr., Hopkinsville, KY, for Appellee.

Before COMBS, Chief Judge; KELLER, Judge; BUCKINGHAM,[1] Senior Judge.

*OPINION*

KELLER, Judge.

Julie Christine Rhodes, the daughter of Cheri Ann Pederson and the personal representative of her estate, has appealed from the order of the Lyon Circuit Court dismissing the action and denying her motion to be substituted as a party and to revive the dissolution action. The primary issue in this case is whether the circuit court could and should have entered a *nunc pro tunc* decree dissolving the marriage after Cheri's death and allowing her portion of the marital property and past due temporary maintenance payments to go to her estate. We affirm.

We shall only briefly set out the facts underlying the appeal. Cheri (born March 12, 1945) and Wayne Pederson (born May 16, 1949) were married in St. Louis, Missouri on March 23, 1979. During the course of the marriage, Wayne purchased Leisure Cruise, Inc., a marina operating under the name of Buzzard Rock Marina in Kuttawa, Kentucky. They also purchased real estate on the island of St. John, Virgin Islands. Cheri and Wayne separated on May 31, 2003, and Cheri filed a Verified Petition for Dissolution of Marriage on September 12, 2003. In April 2004, the circuit court awarded Cheri $6000 per month in temporary maintenance. Over Wayne's objection, the circuit court ordered the sale of the marina and the home on St. John, noting that both constituted marital property. Wayne continued to contest the ordered sale of the marina, and moved in late November 2004 to terminate his maintenance obligation.

1. Senior Judge David C. Buckingham, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

While he did pay his maintenance obligations through February 2005, it is undisputed that Wayne did not pay maintenance to Cheri for the months of March, April, May, and June 2005. In May 2005, the circuit court ordered that the St. John property was to be listed for $850,000 with a realtor for thirty days and that the common stock of Leisure Cruise was to be sold at absolute auction. Shortly thereafter, Wayne moved the circuit court to hold Cheri in contempt for her refusal to sign and forward the listing agreement for the St. John property or to turn over the keys to the realtor. Wayne also accused her of trying to sabotage the sale. The motion was scheduled to be heard on June 6, 2005.

On June 9, 2005, the circuit court entered an order noting Cheri's reported death the previous day and abating all orders requiring future action, including the sale of the marital assets.[2] On June 29, the circuit court indicated by order that it would be dismissing the action without a hearing, unless either side requested one. Wayne's counsel requested a hearing, which was held on July 8. In a July 12 order, the circuit court found that the real party in interest was now Cheri's estate and provided the estate thirty days to enter an appearance for any matters pertaining to the claims of or against the estate. In August, Julie Christine Rhodes notified the circuit court that she was the personal representative of Cheri's estate and that she intended to revive the action. Several months later, counsel made an appearance on her behalf.

On December 27, 2005, Rhodes filed a pleading captioned "SUGGESTION OF DEATH AND APPLICATION FOR SUBSTITUTION OF PRIVITY AND REVIVAL OF ACTION." The same day, she also moved the circuit court to enter a decree of dissolution *nunc pro tunc* and dispose of the marital property as well as for a partial summary judgment on past due maintenance. In a supporting memorandum, Rhodes argued that as a matter of equity, the circuit court should enter the decree despite Cheri's death, as all of the issues surrounding the action had already been decided, but for the entry of the decree. Wayne, disagreeing with Rhodes' assertions, argued that the dissolution action was still pending at the time of Cheri's death as no decree had been entered. Because of the personal nature of such actions, Wayne argued that the death of one party while the suit is pending causes it to abate. For this reason, the circuit court lost jurisdiction when Cheri died, and the marriage was terminated at that time by operation of law. Wayne also moved to dismiss the action, noting that the action could not be revived in the absence of the entry of a final decree. In a later reply, Rhodes argued that she, as the personal representative of Cheri's estate, had a vested right to past due maintenance of $24,000 and was entitled to a share of the marital property that had already been decided. On April 6, 2006, the circuit court entered an order denying Rhodes' application for substitution of privity and revival, and dismissing the claim. This appeal followed.

On appeal, Rhodes continues to argue that the circuit court had already decided to dissolve the marriage and divide the property. Therefore, it erred when it failed to revive the action, to enter a decree of dissolution, or to equally distribute the marital property. She continues to urge the application of principles of equity to prevent an injustice from occurring.

**2.** Cheri committed suicide on June 8 by jumping off of a bridge. Her body was not recovered until June 10.

She also contends that Cheri's right to maintenance had vested at the time of her death, despite Wayne's attempt to terminate this obligation. In his brief, Wayne maintains that the dissolution action ended upon Cheri's death, divesting the circuit court of jurisdiction to further rule on the case.

Because this case concerns a pure question of law, we shall review the circuit court's order *de novo*. *Western Kentucky Coca–Cola Bottling Co., Inc. v. Revenue Cabinet*, 80 S.W.3d 787, 790 (Ky.App.2001). We have reviewed the order entered by former Judge Cunningham, and because we cannot improve upon it, we shall adopt the following portion of it as our own:

The Petitioner, Cheri Ann Pederson, initiated this action on or about September 12, 2003 to dissolve her marriage to the Respondent, Wayne G. Pederson. This very complicated, entangling and ultimately tragic case was in full litigation before this Court for approximately two years. The parties' two primary marital assets were the stock in Leisure Cruise, Inc., d/b/a Buzzard Rock Marina in Lyon County, Kentucky, and the real estate located on St. John, Virgin Islands. The disposition of these two assets was bitterly contested by the parties with bad feelings abounding on both sides.

At the time of the death of Cheri Ann Pederson on or about June 8, 2005, there had already been several orders entered by this Court, to include those dealing with temporary maintenance and the sale of the marital assets. There were also pending motions to modify maintenance as well as for contempt. The Court abated the proceedings by order entered June 9, 2005.

Applicant, Julie Christine Rhodes, offers very little case law to support her position that a posthumous decree of divorce may now be entered. She relies upon the Kentucky case of *Barth's Adm'r v. Barth*, 102 Ky. 56, 42 S.W. 1116 (1897) as support for a decree to be entered after the death of one of the parties to a divorce. However, this case is distinguishable from the one at bar in that it involved a bigamous marriage which was null and void *ab initio*. All of the remaining case law, much of which has been cited by counsel for Respondent, clearly stands for the proposition that a divorce case is strictly personal, and that all other issues attending thereto are terminated upon the death of either party. *See Estate of Hackler v. Hackler*, 44 Va.App. 51, 602 S.E.2d 426 (Va.App.2004); *In re Marriage of Rettke*, 696 N.W.2d 846 (Minn.App.2005); *White v. Smith*, 645 So.2d 875 (Miss. 1994); *Steele v. Steele*, 757 S.W.2d 340 (Tenn.App.1988); *Brown v. Brown*, 353 N.C. 220, 539 S.E.2d 621 (N.C.2000); *Louthian & Merritt, P.A. v. Davis*, 272 S.C. 330, 251 S.E.2d 757 (S.C.1979).

Counsel for Julie Christine Rhodes argues that this is a case in equity, and that the Court had already found the marriage to be irretrievably broken and had already decreed, at least verbally, that the two primary assets hereinbefore referenced were marital property. She argues that this Court should now reduce to writing what it had already concluded and enter a judgment of divorce and an order for the equitable division of these assets.

But the law is clear that only after a decree in divorce is granted, or perhaps a written separation agreement has been entered into by the parties, can the court continue to litigate the attending issues, including the equitable distribution of property. Only after a decree in divorce is granted, and thereafter one of the parties dies, can the court continue

with the equitable distribution of marital property.[3]

If, on the other hand, the court had entered a decree, or if the judicial function had terminated without the formal entry of a decree, the death of a spouse would not affect the matter.[4] The doctrine of abatement is only inapplicable where the dissolution of marriage has been ordered prior to the death of the party, even though the order may be partial, interlocutory or not a final judgment resolving all issues in the case.

There is simply no law in Kentucky that supports the conclusion that a divorce action may be revived after the death of one of the parties. As the Supreme Court of Georgia has so eloquently noted, "The law favors marriage, not divorce. No matter how serious the apparent marital difficulties, we must presume until entry of the divorce decree that the parties might have reconciled and continued their marriage." See Segars v. Brooks, 248 Ga. 427, 284 S.E.2d 13 (1981).

This determination by this Court, as suggested during the arguments on the motions, does not necessarily portend a conclusion of the issues involved in this case. There are, for instance, existing orders for maintenance and property distribution which may or may not have legal significance if enforcement is pursued in a different forum. This Court only concludes that within this divorce action, such issues ceased to exist upon the death of Cheri Ann Pederson on June 8, 2005. In essence, this Court has lost jurisdiction of the subject matter.

There is also a strong consideration of judicial economy that bears upon the Court's decision. If the Court somehow prevailed against the strong head wind of the overwhelming myriad of case law and granted the revival of this action, all pertinent issues would be upon the table for litigation. For instance, there is an outstanding order for the sale of the two primary marital assets that would require the Court's attention. To avoid irreparable damage, the Respondent would be in the position of attempting to secure a writ of prohibition until this Court's order allowing the revival could be appealed. Most likely, such a writ would be granted insomuch as the sale of the property by auction as previously ordered could result in irretrievable loss. Then, if the case were appealed and reversed, such litigation would have to be undone and perhaps new litigation instituted in a separate forum. By denying the motion to revive this action, the aggrieved party can pursue her appeal of this Order, but at the same time pursue alternative relief along a different track if such an avenue is available.

Accordingly, the application of movant, Julie Christine Rhodes, as personal representative of the Estate of Cheri Ann Pederson, deceased, for substitution of privity and to revive this action is DENIED.

Our independent research has uncovered little in the way of Kentucky law, reported or unreported, addressing the nunc pro tunc entry of a dissolution decree, but the unpublished decisions we found tend to support the circuit court's decision. In Darpel v. Arnzen, 2006 WL 29042 (Ky.App.2006)(2003–CA–001411–MR), this Court reviewed a judgment ordering the partition of marital real proper-

---

**3.** See 27A *Corpus Juris Secundum,* Divorce § 196, Abatement on death of party. (Footnote 1 in original).

**4.** See 24 *American Jurisprudence,* Second Edition, Divorce and Separation § 140. (Footnote 2 in original).

ty. The lower court had previously entered a dissolution decree *nunc pro tunc* following the husband's death and proceeded with the partition action despite the wife's motion to dismiss. The Court examined the purpose of the *nunc pro tunc* rule, noting that it "is to record some act of the court done at a former time which was not carried into the record." *Id.* at *2. However, the propriety of the *nunc pro tunc* decree was not before the Court, but rather the collateral effect of that decree was at issue. Therefore, the Court was unable to determine whether the decree was properly entered, although it strongly implied that it was not.

In *Hensley v. Hensley*, 2006 WL 337583 (Ky.App.2006)(2004–CA–001010–MR), this Court actually reviewed the propriety of a dissolution decree entered *nunc pro tunc* after the death of a party. There, the record revealed that the lower court had orally granted the decree at the conclusion of the hearing, but the husband was killed before the written decree could be prepared and signed. In that case, the Court held that the entry of the *nunc pro tunc* decree was proper "to give the court's judicial act its proper meaning and effective date." *Id.* at *3. The facts of the present case are clearly distinguishable from the facts in *Hensley*, as the circuit court here never actually granted the decree, either from the bench or in a written ruling. As stated in *Darpel*, the *nunc pro tunc* rule "may be used to make the record speak the truth, but not to make it speak what it did not speak but ought to have spoken." *Darpel*, 2006 WL at *2. The latter situation appears to be the case here.

For the foregoing reasons, the order of the Lyon Circuit Court is affirmed.

ALL CONCUR.